Filed 12/16/15; pub. order 1/7/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BEVERLY ANN RODRIGUEZ,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RANDY MENJIVAR,<br><br>    Defendant and Respondent. | B263062<br><br>(Los Angeles County<br>Super. Ct. No. GQ011451) |

APPEAL from an order of the Superior Court of Los Angeles County, R. Carlton Seaver, Judge.  Reversed and remanded.

Gibson, Dunn & Crutcher LLP, Michael Holecek and Scott A. Edelman; Family Violence Appellate Project, Jennafer Dorfman Wagner; Los Angeles Center for Law & Justice, Carmen McDonald, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

_____

Beverly Ann Rodriguez appeals from the denial of the domestic violence restraining order she sought against Randy Menjivar. Although the trial court found substantial evidence of physical violence, it concluded Rodriguez had not met her burden of proof. Because the trial court erred as a matter of law in that conclusion, we reverse and remand.

## FACTUAL AND PROCEDURAL SUMMARY

Rodriguez and Menjivar began dating in June, 2013; they stopped dating in February, 2014. According to Rodriguez, Menjivar inflicted, and attempted to inflict, physical injury on her during that period. Rodriguez testified that during their relationship, Menjivar exhibited controlling behavior, calling multiple times in a day, accusing Rodriguez of cheating, and taking actions to isolate Rodriguez from contact with others. In November 2013, Rodriguez sought psychological help related to the resulting stress and anxiety. Rodriguez broke off the relationship in December.

In January, 2014, Rodriguez determined she was pregnant, and she resumed the relationship. Menjivar enrolled in three of her four college classes, and, during the one in which he was not enrolled, caused Rodriguez to keep a telephone call open during the class, so that he could monitor whether she was socializing with others; he also kept a line open with her when she was at home, monitoring her activities. Rodriguez's mother, who testified that she had witnessed Menjivar inflict physical injury on her daughter, discovered this open line at 3 a.m. on one occasion; Rodriguez told her mother she did this because she was afraid that Menjivar would hit her if she did not comply.

In January, Menjivar told Rodriguez he had sliced open the neck of her teddy bear because that was what he wanted to do to her. In that same month, Rodriguez was diagnosed with subchorionic hemorrhage and a cyst, and advised to limit strenuous activity and stress. Despite being aware of this diagnosis, Menivar practiced martial arts in close proximity to Rodriguez, despite her requests to stop, played with a knife close to her face, and threatened to beat her with a studded belt. During the pregnancy, he pulled

2

her hair, kicked and slapped her, leaving marks; he punched her with a closed fist, causing bruising; he also pushed her head into a seatbelt holder while driving.

The testimony revealed further incidents of pushing, punching, and erratic driving, causing Rodriguez to be terrified. Menjivar threatened that, if Rodriguez called the police, he would assert that she had abused him. This behavior continued until late February, 2014 when, after experiencing abdominal pain, Rodriguez asked Menjivar to take her to the hospital. During the ride, he again drove erratically, took her telephone away when she called her mother for help, threatened to send her to jail, and finally threatened to drive into the path of an oncoming train. At the hospital, Rodriguez described the events to hospital staff, who called the police.

Rodriguez again stopped seeing Menjivar after her hospitalization, but he continued his actions, threatening her over social media, directly in March, and, she believed, indirectly in April. His friends also posted threats on social media. Rodriguez changed her telephone number and shut down her social media; she ultimately discontinued her college classes. In July, she sought counseling, and after she believed she saw Menjivar in her vicinity sought a restraining order two days later. She testified at the hearing that she was in fear that he might hurt her, or her child, in the future.

The court granted a temporary restraining order on July 24, 2014; the court began the hearing on the permanent order on September 3, 2014, after Rodriguez gave birth to her son. The court conducted additional days of hearing on September 17, and October 8, 2014; the temporary order remained in effect during this time. Rodriguez, her mother, and Menjivar were the sole witnesses.[1] At the conclusion of the hearing, the court denied the request and dissolved the temporary order. Rodriguez appealed.

---

[1] The court also considered the declaration by Rodriguez in support of the protective order and her supplemental declaration.

## DISCUSSION

The Domestic Violence Prevention Act (DVPA) (Fam. Code § 6200 et. seq.)**2** permits the trial court to issue a protective order "to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved; the petitioner must present "reasonable proof of a past act or acts of abuse." (§ 6300.) The abuse that provides a basis for the findings includes bodily injury (§ 6203, subd. (a)(1)); reasonable apprehension of serious bodily injury (§ 6203, subd. (a)(3)); and "behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203 subd. (a)(4)). Section 6320 in turn permits enjoining "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning . . .contacting, either directly or indirectly, by mail or otherwise . . . disturbing the peace of the other party." As a result, abuse under the DVPA includes physical abuse or injury, as well as acts that "destroy[] the mental or emotional calm of the other party." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497 (*Nadkarni*).)

Rodriguez asserts in this appeal that the trial court erred in two aspects of its decision. First, the trial court ruled that the evidence of mental abuse and controlling behavior testified to by Rodriguez, and her mother, were not relevant to its determination. Second, the trial court determined that the significant past acts of physical abuse that it found to be true were too remote in time, and not sufficiently likely to be repeated, to warrant the issuance of a protective order. We agree that the trial court erred on both grounds, and reverse the denial of the order.

### A.     Standard of Review

In general, as with any order granting, or denying, injunctive relief, we review the trial court's order for abuse of discretion. (*Nadkarni, supra,* 173 Cal.App.4th at p. 1495.) However, "the exercise of discretion is not unfettered in such cases. (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 337 [67 Cal. Rptr. 3d 286].) All exercises of

---

**2**     All future statutory references are to the Family Code.

discretion must be guided by applicable legal principles, however, which are derived from the statute under which discretion is conferred. [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. [Citation.]" (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106 [159 Cal. Rptr. 3d 580].) The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420-421 [67 Cal. Rptr. 3d 317]) requiring de novo review (*Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1118 [104 Cal. Rptr. 3d 275])." (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 (*Eneaji*).)

B.    Acts That Disturb The Petitioner's Peace Support The Issuance of a DVPA Order

From the first day of the hearing, the trial court took the position that mental abuse, to which Rodriguez sought to testify, was not subject to the statute: "There's a whole movement who believes mental abuse ought to be considered domestic violence. For whatever reason, the state has not adopted that in its domestic violence statute. So being unpleasant, generally not saying nice things, excluding you from friends and stuff, probably not, under all facts and circumstances, generally is not domestic violence. Similarly, the court indicated it would not consider controlling behavior as a basis for an order: "If you happen to be controlling, I don't think that's a good thing to do. It's unpleasant. But it's not something that this court is going to sanction."

The court sustained Menjivar's objection to evidence of controlling behavior on the second day of the proceedings, and, in stating its reasons for denying the order, discussed only evidence with respect to physical violence. The court erred.

Mental abuse is relevant evidence in a DVPA proceeding. In *Nadkarni*, the trial court dismissed the petitioner's application for a temporary DVPA order, finding that the

5

conduct alleged—publication and threatened publication of personal emails—did not constitute abuse within the meaning of the statute. The petitioner also alleged prior physical and emotional abuse, giving rise to her fear that the respondent would use the emails to "control, harass, and abuse" her. (*Nadkarni*, *supra,* 173 Cal.App.4th at p. 1492.) On appeal, the court reversed, concluding that actual infliction of physical injury was not required, and that non-violent conduct could support the finding of abuse. Specifically, construing the DVPA broadly, as the court concluded the Legislature intended, allegations that accessing and disclosing private emails disturbed petitioner's peace could, if proved, constitute abuse within the meaning of the statute. (*Id*. at p. 1499.)

*Nadkarni* is not limited to the application for a temporary order, but has been applied to the issuance of a permanent order after hearing. For example, in *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, petitioner, after her relationship with respondent ended, was subjected to ongoing contact, electronically and in person, by respondent, despite her requests that he stop. Adopting *Nadkarni*, the court affirmed the issuance of a DVPA order, because the acts constituted a disturbance of petitioner's peace, and was thus abuse under the statute. (*Id*. at pp. 1146-1147.)

In *In re Marriage of Evilsizor and Sweeney* (2015) 237 Cal.App.4th 1416, the Court of Appeal also affirmed the issuance of a DVPA order based on Sweeney's downloading and dissemination of text messages. Even in the absence of any allegations of physical abuse, the challenged behavior was held sufficient.[3]

In this case, the testimony that the trial court did permit revealed significant acts of emotional abuse, well beyond accessing and disseminating texts and email. The acts of isolation, control, and threats were sufficient to demonstrate the destruction of Rodriguez's mental and emotional calm. Indeed, that disturbance continued despite

---

[3] The Court also noted that, effective January 1, 2015, the DVPA specifically provides that abuse is not limited to physical injury. (*In re Marriage of Evilsizor and Sweeney, supra,* 237 at p. 1425, fn. 8.) The Court applied the prior version of the statute, as do we; we conclude that the amendment was reflective of existing case law, as described in the text, and clarified, but did not change, the applicable standard.

respondents' knowledge of the adverse consequences to Rodriquez's health and pregnancy. The trial court erred in failing to consider this testimony as the basis for a DVPA order; this evidence demonstrated abuse within the meaning of section 6320.

C.    The Court's Finding of Physical Abuse Supported the Issuance of the Order

At the conclusion of the testimony, and after hearing the arguments of counsel, the trial court dissolved the temporary order and declined to issue a permanent order. The court found "there was significant violence through February of 2014. The court is unmoved by any reference to violence or threats of violence since that date. It's a tough one. But the court also recognizes that respondent moved out of Los Angeles County— moved out of the area, apparently, according to his own testimony to be away from the petitioner."[4] Counsel then asked: "You're making a determination that there was domestic violence in the past and that that is not sufficient to order a restraining order going forward?" The court replied, "That's right."[5]

The trial court's express findings, as well as the response to counsel's question, indicate that the court found the testimony of physical abuse credible, and the level of abuse substantial. The court, however, appeared to believe that the absence of actual violence in the six month period leading up to the hearing, as well as the conclusion that respondent had left the area, was an appropriate basis to deny the protective order. The court erred.

---

[4]    The court's tentative clarifies its thinking: "The court is ready to find that there is significant physical domestic violence abuse, domestic violence through February 2014. I think the evidence for anything after that date can only be called remote. I suppose there's some chance that they may get together in connection with the child. But I don't see much since then so." The court had previously expressed doubt that an order was appropriate in light of the passage of time.

[5]    Menjivar, in his testimony, denied the physical violence and electronic contact, but has not appealed the court's finding or made an appearance at this court.

First, respondent's own testimony established that he had not left the county, or the area. He testified that he lives in the mid-city area, although he dropped his classes in Pasadena. By his own words, he remained in geographical proximity to petitioner.

Second, and of critical importance, the court's reasoning rests on an error of law. No showing of the probability of future abuse is required to issue a DVPA restraining order: "A trial court is vested with discretion to issue a protective order under the DVPA simply on the basis of an affidavit showing past abuse." (*Nakamura, supra,* 156 Cal.App.4th at p. 334.) A challenge to the issuance of an order where respondent testified under oath that he would never contact the petitioner again, and where, as in this case, the respondent complied with the temporary restraining order while it was in place, failed because the statute does not require any showing of the likelihood of future abuse. (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774.)

The fact that there had been a six month hiatus in violence in this case does not support the court's erroneous imposition of a requirement of a showing of likelihood of future abuse. The DVPA expressly allows renewal of a protective order without a showing of any further abuse beyond that on which the original order was based. (§ 6345; *Eneaji, supra*, 229 Cal.App.4th at p. 1464 ["'It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order. If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order. Indeed the fact a protective order has proved effective is a good reason for seeking its renewal'"].)

Here, too, the fact that six months had passed, during almost half of which respondent was subject to a protective order, does not justify dissolving that order and failing to issue a new order. While the trial court believed that there had been significant physical violence, it found that showing of past abuse insufficient as a matter of law. Because the law is otherwise, the order denying the issuance of a DVPA protective order must be reversed, and the matter remanded for the trial court to issue the restraining order in accordance with the law.

8

## DISPOSITION

The order denying the issuance of the protective order is reversed and the matter remanded for the trial court to issue the protective order in accordance with this opinion. Rodriguez is to recover her costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


SEGAL, J.

Filed 1/7/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BEVERLY ANN RODRIGUEZ,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>RANDY MENJIVAR,<br><br>      Defendant and Respondent. | B263062<br><br>(Los Angeles County<br>Super. Ct. No. GQ011451)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION;<br>NO CHANGE IN JUDGMENT** |

THE COURT:

The opinion in the above-entitled matter filed on December 16, 2015 was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

This order does not change the judgment.

_____

PERLUSS, P. J.,                    ZELON, J.,                    SEGAL, J.