Filed 3/9/16  Cvetkovic v. Cvetkovic CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALEKSANDRA CVETKOVIC, | B256815 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. YQ020286, YQ020650) |
| v. | |
| ALEKSANDAR CVETKOVIC, | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Patricia J. Titus, Judge.  Affirmed.

Aleksandar Cvetkovic, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————

Aleksandar and Aleksandra Cvetkovic[1] divorced in 2005. In 2014, Aleksandra filed a petition seeking a domestic violence restraining order (DVRO) against Aleksandar. Aleksandar then filed a cross-petition seeking a DVRO against Aleksandra. The trial court granted Aleksandra's petition and denied Aleksandar's cross-petition. On appeal, Aleksandar contends that the trial court abused its discretion in issuing the DVRO against him and not against Aleksandra. We find that the trial court's ruling is supported by substantial evidence and therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.  THE CROSS-PETITIONS FOR A DVRO**

On March 18, 2014, Aleksandra filed a petition for a DVRO against Aleksandar, seeking both personal conduct and stay-away orders. (L.A. Superior Court case No. YQ020286.) She claimed that Aleksandar recently had been harassing her by: calling her repeatedly on her mobile, home, and work phone numbers; walking around her apartment building and looking in her windows; sitting in front of her door when she was not home; calling her names and saying he wanted her dead; and placing on the cars in the parking lot of her workplace a flyer that called her a slut and described her sexual activity with her boyfriend, Jason Mark. Based on these claims, Aleksandra obtained a temporary restraining order (TRO) against Aleksandar, which precluded him from having any contact or communication with her. The TRO remained in effect until April 30.

On April 18, 2014, Aleksandar filed his own petition, seeking both personal conduct and stay-away orders against Aleksandra. (L.A. Superior Court case No. YQ020650.) He claimed that Aleksandra was sending him nasty, humiliating, and threatening emails and making improper and threatening telephone calls, and that she obtained the TRO as a "pretext" so that she could go to his house uninvited and post court paperwork on the cars in his neighborhood to humiliate him. He also claimed that

---

[1]     Because the parties have the same last name, we refer to them by their first names.

Aleksandra previously had been arrested for assault with a deadly weapon, and that "[s]he is closely assisted by" Mark, a "convicted criminal." The trial court denied Aleksandar's TRO request.

On April 29, 2014, Aleksandar filed his response to Aleksandra's DVRO petition. He noted that Aleksandra did not claim that he had engaged in any actual or threatened violence towards her. He claimed that her request was "the latest round of acrimony between two divorced persons" that was triggered by an email he received from Mark and by her refusal to return a car he had loaned her. Aleksandar further claimed that Aleksandra had a long history of mental illness and violence, and that she was being influenced by Mark, who has a history of drug and alcohol abuse and domestic violence. He supported his response with numerous exhibits.

## B.    THE HEARING ON THE CROSS-PETITIONS

On April 30, 2014, the court conducted an evidentiary hearing on the cross-petitions. Both parties testified and introduced supporting exhibits.

### 1.    *Aleksandra's Petition*

Aleksandra claimed that she was seeking a restraining order because she feared Aleksandar. She testified: "We have a very long history. He is very obsessive. He gets aggressive. He is very abusive. I never, ever go to his door, initiate [a] call or anything. He comes to my door. When I don't want to talk to him . . . on the phone, he will come to my door, knocking and forcefully wants to come in." She added that Aleksandar had physically abused her in the past.

Aleksandra decided to file for a DVRO based on a course of conduct that started on March 12, 2014. Aleksandar called her that day, saying that he had received photographs of Aleksandra and Mark. During the call, he was angry and insulting, despite the fact that she had not sent him the photographs. Afterwards, Aleksandar continued to call her and leave unwelcome and disturbing messages. She tried to block his phone number, but he hid his number when he called her to avoid being blocked. Aleksandar also sent her unwanted emails.

3

Beyond the unwelcome calls and emails, Aleksandar appeared at Aleksandra's home uninvited. On March 16, Aleksandra and Mark returned home from a weekend trip to Palm Springs and saw Aleksandar driving around her apartment building. Aleksandar parked his car and spoke to them in the driveway. Though Aleksandra told him that she did not want to speak to him, Aleksandar persisted. He insulted her and Mark, referring to Mark as a convicted criminal, and continued to talk despite the fact that she had told him that his presence was unwelcome. Aleksandra and Mark turned their backs to Aleksandar and walked away from him, making it clear that they were not interested in speaking with him. While walking away, Aleksandra advised Aleksandar that she would call the police if he did not stop disturbing her. The next day, March 17, Aleksandra filed a police report about Aleksandar's behavior.

On March 18, Aleksandra obtained a TRO and notified Aleksandar of it by email. The next day, despite the TRO, he called her and left a 15-minute voicemail message, saying that she was stupid and only going to cause herself trouble if she continued to go to court. A few days later, on March 21, he sent her a lengthy email that accused her of abusing the "TRO process" to avoid having to return his property. He then threatened to sue her for the property and explained that if she failed "to resolve issues amicably," she would open up a "'Pandora's Box' that will not only deplete [her] saving[s] but will lead to [the] legal trouble [he] described in [his] earlier voice message." Near the end of the email, Aleksandar acknowledged that he "was not happy when [Aleksandra] ignored [him]" and would not answer his phone calls, but that he did not hate her. He only wanted her to explain to him her "new dream."

4

## 2. *Aleksandar's Response and Cross-Petition*

Aleksandar denied that he had been harassing Aleksandra. He explained that he only contacted her to discuss a property dispute over a car, jewelry, paintings, and books. He claimed that Aleksandra's DVRO request was based on lies and fabrications. He denied contacting her after she told him not to do so, and he denied ever physically abusing her.

Addressing Aleksandra's specific allegations, Aleksandar testified that he called her on March 12 after receiving two emails from Mark. He calmly asked her why he had received the emails, and she responded that she was unable to speak with him and would call him back. Aleksandar became concerned for the safety of his 19-year-old daughter, who lived with Aleksandra (her mother), because Mark is "a criminal" who has an "extreme record of domestic violence."

Subsequently, Aleksandar called Aleksandra once or twice to speak to her about their daughter. He did not call her incessantly.[2] When Aleksandra did not respond to his calls, he went to her home on March 14. Aleksandra was not home, but Mark was there and confronted Aleksandar about coming to the apartment. Aleksandar said that he came over because he was concerned and "want[ed] to know what's going on." Mark started to yell at him and grab him. Aleksandar left without seeing Aleksandra that day.

Aleksandar returned to Aleksandra's home two days later, on Sunday, March 16. He testified that he went there to see his daughter. Because he did not see his daughter's car in the parking lot, he decided to park down the street to wait for her. While he was waiting in his car, Mark approached him and insisted on speaking with him. Mark then brought Aleksandra down to his parked car to talk. Aleksandar "was extremely careful to avoid any inappropriate contact," as his attorney had advised him not to have any contact

---

[2]     Aleksandar denied making the 11 calls shown on Aleksandra's phone records. He accused her of "absolute fraud" by manufacturing the list and then fabricating corresponding voicemail messages by using a hand-recorder to record prior conversations.

with Aleksandra. According to Aleksandar, "[t]hat's exactly what [he] was doing." When confronted by Aleksandra and Mark, he explained to them that he was only there to speak with his daughter.

On March 21, after Aleksandra filed her DVRO petition, Aleksandar did send her an email. At the hearing, he claimed that he did not know about the TRO because he had not yet read her March 18 email. Contrary to this claim, Aleksandar testified that he read the March 18 email on March 20—the day before he sent his email.[3] In explaining his March 21 email, Aleksandar stated that he contacted her for the same reason he had always contacted her—namely, to address legitimate property disputes.

3. *The Trial Court's Ruling*

Following argument by counsel, the trial court granted Aleksandra's DVRO petition and denied Aleksandar's cross-petition. The court found it "abundantly clear" from the evidence "that a restraining order needs to issue." In reaching this conclusion, the trial court noted: "Harassment is not limited to just threats of violence. It is unwanted contact after being told to stop contacting me."

On June 6, Aleksandar filed timely notices of appeal from the April 30 orders.[4]

---

[3]     Aleksandar testified that he read Aleksandra's March 18th email on March 20th: "For the record, I read the e-mail she sent me on the 18th on the 20th." Yet he claims on appeal, without any record citation, that he read the email on March 21: "The Court seemed to ignore the fact that Aleksandar testified that he did not receive[] the message that Aleksandra allegedly composed on March 18, 2014 until March 21, 2014 . . . ."

[4]     The trial court issued two other rulings that are not part of this appeal: on June 4, Aleksandar unsuccessfully filed a motion to disqualify the trial judge under Code of Civil Procedure section 170.1, subdivision (a)(6), for allegedly biased treatment; and on June 18, the court granted Aleksandra's request for an order requiring Aleksandar to move his belongings out of a garage located in El Segundo, California.

**DISCUSSION**

**A.    THE APPLICABLE LEGAL PRINCIPLES**

Aleksandar challenges the trial court's decision to grant Aleksandra's request for a restraining order under the Domestic Violence Protection Act (DVPA) while denying him the same relief against her.  In considering these challenges, we start with the applicable legal principles.

1.    *The Standard of Review*

The trial court's decision whether to grant relief under the DVPA required it to resolve disputed facts based on credibility determinations.  Our review of that decision is for an abuse of discretion.  (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143 ["A granting or denial of injunctive relief is generally reviewed by the appellate court based upon the abuse of discretion standard."] (*Burquet*).)  In applying this deferential standard, we review the record to determine whether the trial court's ruling is supported by substantial evidence.  (*Ibid*.)  Our review presumes that all factual disputes were resolved in the prevailing party's favor, unless the trial court indicated otherwise.  (*Ibid*. ["'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment.'"].)  If there is substantial evidence, we must affirm the judgment unless the trial court "exceeded 'the bounds of reason'" or applied the wrong legal standard in exercising its discretion.  (*Id*. at p. 1144.)[5]

2.    *The DVPA*

"The DVPA authorizes issuance of an order restraining a person 'for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse.'  ([Fam. Code,] § 6300.)" (*Gonzalez v. Munoz*, *supra*, 156 Cal.App.4th at p. 421.)

---

[5]    The question whether the trial court applied the correct legal standard is one of law that we decide de novo.  (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.)

"Abuse" is defined by the DVPA to include physical violence, sexual assault, or "behavior that has been or could be enjoined pursuant to [Family Code s]ection 6320." (Fam. Code, § 6203, subd. (a).) Under Family Code section 6203, "[a]buse is not limited to the actual infliction of physical injury or assault." (*Id.*, § 6203, subd. (b).) Family Code section 6320 provides for an injunction to prevent a party from, among other things, "molesting, . . . stalking, threatening, . . . harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, . . . contacting, either directly or indirectly, by mail or otherwise, . . . or disturbing the peace of the other party . . . ." (*Id.*, § 6320, subd. (a).)

The phrase "'disturbing the peace of the other party'" has been interpreted to include any "conduct that destroys the mental or emotional calm of the other party." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497; accord, *Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 821; *Gou v. Xiao* (2014) 228 Cal.App.4th 812, 817; *Burquet*, *supra*, 223 Cal.App.4th at p. 1146.) In *Burquet*, for example, the defendant refused to accept the end of his romantic relationship with the plaintiff. In the face of repeated requests that he cease further contact, the defendant "engag[ed] in a course of conduct of contacting [the] plaintiff by phone, e-mail, and text, which messages contained inappropriate sexual innuendos, and arriving at her residence unannounced and uninvited, and then refusing to leave . . . ." (*Burquet*, *supra*, at p. 1144.) On appeal, the court found that this evidence supported the trial court's decision to grant a DVRO against the defendant for disturbing the mental and emotional tranquility of the plaintiff. (*Id.* at p. 1144; see also *Rodriguez*, *supra*, at p. 822 [noting that ex-boyfriend's "significant acts of emotional abuse," including "acts of isolation, control, and threats[,] were sufficient to demonstrate the destruction of [ex-girlfriend's] mental and emotional calm"]; *In re Marriage of Nadkarni*, *supra*, at p. 1498 [stating that "a former husband's alleged conduct in destroying the mental or emotional calm of his former wife by accessing, reading and publicly disclosing her confidential e-mails" may qualify as "abuse" under the DVPA].)

8

**B.    ALEKSANDRA'S PETITION FOR A DVRO**

The trial court in this case applied the correct legal standard in finding that Aleksandar's conduct constituted "abuse" under the DVPA.  The court correctly observed that the DVPA extends protection beyond "threats of violence" to include "unwanted contact after being told to stop."  The question on appeal is whether the trial court's finding is supported by substantial evidence.[6]

According to Aleksandar, the evidence falls short of what the law requires.  He argues that the trial court rested its decision on one fact—i.e., the March 21 email he sent Aleksandra after she obtained a TRO and told him to stop contacting her.  He claims that he did not know at the time that his email was unwelcome because he had not yet received her message advising him of the TRO, and that his email was a peaceful, business-related message that cannot be construed as an act of abuse.  He further claims that the calls he made to her were "legitimate," and that there was no evidence of actual or threatened violence, stalking, or other conduct that warranted issuing the DVRO.  Aleksandra's "emotional turmoil," he concludes, was entirely self-inflicted.  Aleksandar's claims fail for two reasons.

First, Aleksandar's argument is based on his unsupported assertion that the trial court relied solely on his March 21 email in finding evidence of abusive conduct.  There is nothing in the record to suggest that the trial court had such a singular focus.  The trial court concluded that it was "abundantly clear" from the evidence that a DVRO against Aleksandar was warranted.  The court then noted that the legal standard for "abuse" includes unwanted contact.  By generally stating the applicable standard, the trial court did not specifically suggest that it was limiting its analysis to a single item of evidence.

---

[6]    Although Aleksandar claims that the trial court applied the wrong legal standard, his argument is circular:  he contends that the trial court must have applied an incorrect legal standard because its finding of "abuse" is not supported by the evidence.  Properly understood, Aleksandar's entire challenge is to the sufficiency of the evidence.

Second, Aleksandar's sufficiency challenge ignores the standard of review, inviting us to construe the evidence in the light most favorable to him, when we are required instead to view the record for evidence that supports the trial court's finding. (*Burquet*, *supra*, 223 Cal.App.4th at p. 1143.) When viewing the record in its proper light, there is substantial evidence that Aleksandar's phone calls, voicemail messages, emails, and other contacts disturbed Aleksandra's mental or emotional calm, and that they continued even after she repeatedly told him that she wanted him to stop. (*Ibid.*) Aleksandar does not explain why the evidence Aleksandra presented at the hearing— which we must credit for purposes of our review on appeal—is insufficient. Instead, he seeks to reargue the evidence, stating that all his actions were taken in good faith and that Aleksandra's contrary allegations are false. But under the controlling standard of review, we are not free to reweigh the evidence and second-guess the trial court's credibility determinations, as he requests us to do. (*Ibid.*; *Gonzalez v. Munoz*, *supra*, 156 Cal.App.4th at p. 420.)

## C.    ALEKSANDAR'S CROSS-PETITION FOR A DVRO

Aleksandar contends that the trial court deprived him of his right to due process of law by denying his cross-petition for a DVRO without giving him sufficient time to present his case. He complains that he should have been given a "comparable amount of time" that the trial court had given Aleksandra to present her case. The record does not support this complaint.

On the contrary, the trial court announced at the outset that she would "hear both cases at the same time." Each party was represented by counsel, and each party was given the opportunity to present a narrative of his or her version of the facts, subject to cross-examination and re-direct examination. The trial court did not rush the parties. In fact, towards the end of the day, the trial court indicated that the parties would have to "pick another day" to continue the hearing. In response, Aleksandar's counsel stated that "we are about finished" and urged the court to "wrap it up today." Both counsel estimated that collectively they had less than ten minutes of additional evidence to present. After the parties completed that evidence, the court permitted both counsel to

argue and then issued its ruling. As the trial court was explaining the restraining order, Aleksandar interrupted by stating: "I would like to know, your honor, why I cannot present my case." Given that the parties already had rested and argued their respective cases, however, the statement was a nonsequitur. It appeared that Aleksandar was simply reacting to an adverse ruling.

Finally, Aleksandar argues that the trial court erred in failing to provide detailed findings as required by Family Code section 6305. That section provides in relevant part that a trial court may not issue a mutual restraining order under the DVPA unless "[t]he court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (Fam. Code, § 6305, subd. (a)(2).) This statutory requirement, however, only applies when a trial court decides that a mutual restraining order is appropriate. That was not the case here. Nor does the record show that Aleksandar otherwise requested that the trial court make specific findings. Thus, Aleksandar's argument lacks merit.

## DISPOSITION

The orders are affirmed. Aleksandra to recover costs on appeal.


BLUMENFELD, J.*


We concur:



ZELON, Acting P. J.



SEGAL, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11