Filed 4/28/21

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| J.H.,<br><br>        Respondent,<br>v.<br>G.H.,<br><br>        Appellant. | A160303<br><br>(City & County of San Francisco<br>Super. Ct. No. FDI18790640) |

Appellant G.H. appeals from an order granting her a two-year domestic violence restraining order (DVRO) against respondent J.H. In the published portion of our opinion, we conclude the trial court did not err in excluding the parties' children as protected parties in the DVRO. In the unpublished portion, we conclude the court did not err in precluding their 12-year-old daughter from testifying at the contested hearing or in denying G.H.'s request for a five-year DVRO. The order is affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Background and DVRO Application**

G.H. and J.H. married in 2006 and had two children, L.H. and B.H. The couple separated in August 2018. Around that time, a dependency case was initiated for the children based on allegations that J.H. was abusing

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication, with the exception of parts B and C of the Discussion.

1

G.H. in their presence. During the dependency proceedings, G.H. retained custody of the children, and J.H. had supervised visits. In late January 2019, upon stipulation of the parties, the juvenile court issued a final judgment in the dependency matter granting joint legal custody of the children but awarding G.H. sole physical custody. The court granted J.H. supervised visitation, noting the expectation that the family would "move toward less restrictive visits after more time in either the therapeutic or supervised setting and continued services for the family . . . ." No restraining order was sought against J.H. as part of this judgment, and no such order was imposed.

In the meantime, in October 2018, J.H. filed for divorce. In April 2019, J.H. filed a request for a custody evaluation and "family therapy" with the children, which the court granted in July 2019. In August 2019, G.H. filed a request for a DVRO in favor of herself and her children against J.H. G.H. sought an order that J.H. not harass or contact her and the children, that he stay at least 100 yards from them, and that they not engage in joint therapy pending a further court order following a custody evaluation. She also sought modified child custody and visitation orders to prohibit visitation before and after the hearing. In her supporting declaration, G.H. alleged J.H. unilaterally withdrew the children from school to intentionally leave them without time or resources to find a comparable school. She also detailed incidents of past abuse allegedly perpetrated by J.H. from 2013 to 2018.

The trial court issued a temporary DVRO in August 2019. Among other things, the temporary order enjoined J.H. from harassing, attacking, or contacting G.H.[1] But the court denied G.H.'s requests for a stay away order,

---

[1] Notably, although both parties assert in their briefing that the temporary DVRO included L.H. and B.H. as protected parties in terms of the conduct orders, the trial court did not check the box in the temporary DVRO form that would have indicated the children were deemed protected persons.

2

for sole legal and physical custody, and for a ban on visitation. The court also denied—pending a hearing—G.H.'s request that no joint therapy with J.H. occur until after a custody evaluation. Both parties filed briefs in advance of the contested hearing on the matter.

### B. The Contested Hearing

The trial court held a contested hearing over the course of two days in November 2019 and two days in January 2020. The following is a summary of the evidence presented.

G.H. first testified about J.H.'s abuse of her in August 2018. In short, J.H. was drinking when he and G.H. got into a verbal argument while their daughter, L.H., stood between them. J.H. tackled G.H. to the ground, then crossed and pressed her arms into her throat as he put his weight on her such that she could not breathe. At some point, J.H. threw beer at G.H., and G.H. urinated on herself and lost consciousness. Their 12-year-old daughter, L.H., called 911. L.H. was scared and thought G.H. had died. Their younger son, B.H., hid in his bedroom, did not want to be apart from G.H., and wet his bed several times that week.

G.H. also testified about an incident in November 2016. The children were playing when J.H. roughly grabbed their son off his sister, shook him, and threw him onto a bed. This caused bruising to their son's ribs. When G.H. tried to tell J.H. he had been too rough, J.H. grabbed G.H. by the back of her neck, shoved her down into a mattress, then suffocated her with a mattress topper. J.H. also put his knee into G.H.'s back, scratched and hit the side of her face, and banged her head against a door and door frame. During this incident, the children yelled for J.H. to stop.

G.H. testified that the first act of abuse she could remember occurred in 2013, when J.H. tried to force G.H. to engage in anal sex. He screamed at her

3

and threw plastic bottles and lubricant at her. J.H. forced her to engage in anal sex several times a year thereafter, despite her refusals. He also threatened her with sexual violence and once threatened to hire men to kidnap and rape her. J.H. called her names in front of the children, and he threatened to leave her penniless or homeless or to make her disappear. Once in August 2013, J.H. came home drunk and urinated on their shared bed with G.H. asleep in it. At some point, G.H. came home to find J.H. watching pornography on a large screen while their daughter was asleep on the sofa next to him and their son was in his room within hearing distance.

G.H. testified this history of violence has left their daughter L.H. withdrawn, afraid, clingy, and overprotective towards G.H. and B.H. As for B.H., he developed a stutter, a nervous tic, and often wets the bed. G.H. testified neither child wants to visit J.H.

The children's former teacher testified that she observed G.H. in November 2016 with bruising on her face and neck. Two other witnesses testified, among other things, that G.H. was a very truthful person.

J.H. took the stand and acknowledged his past acts of violence against G.H., but he indicated there had been no violence since August 2018. With regard to the August 2018 incident, J.H. testified G.H. scratched and slapped him four times in the face, breaking a blood vessel in his eye. He acknowledged restraining G.H. by her arms, but denied choking her. As to the November 2016 incident, he denied harming his son and denied slamming G.H.'s head into a door. He claimed he and J.H. consensually engaged in anal sex, denied ever forcing G.H. to do so, and denied throwing lubricant or plastic bottles at her. He denied watching pornography while his children were present. He denied threatening to have men kidnap and rape G.H., or intentionally urinating on their bed in 2013. He denied threatening

4

to harm or kill G.H. or to make her or the children homeless. He denied unilaterally withdrawing the children from school and testified he had emailed G.H. about putting the children in public school because he could not afford to fully pay for the private school they had been considering.

J.H. testified he was ashamed and regretful that he committed acts of domestic violence, and he wanted to develop a healthy relationship with his children going forward. When asked what he had done to ensure he would never commit another act of domestic violence, he testified he completed a 52-hour batterer intervention course and a 12-hour parenting course. Also, he was attending individual therapy and changed his alcohol consumption habits, and he was living a healthier lifestyle generally (due in part to his having a heart attack in 2019).

The parties stipulated to the admission of a jurisdiction/disposition report and an addendum authored by Michelle Garabedian, a protective services worker from the San Francisco Human Services Agency (Agency) with 25 years of experience who worked on the family's dependency case. The jurisdiction/disposition report, dated October 2018, described the presence of L.H. and B.H. during acts of domestic violence between G.H. and J.H., and the children's reaction to the domestic violence. For example, G.H. reported B.H. started wetting his bed after the domestic violence in 2016. G.H. also reported that B.H. developed a stutter in 2016, and the children were "clingy and appeared traumatized" after one incident but were doing better emotionally at the time of the report. The report described L.H. as being "very upset with her father right now," but B.H. "appears to have a good relationship with both of his parents." Moreover, the report stated that L.H. "appears to be a sounding board for her mother as her mother has confided in her when her father comes home late . . . ." With regard to

5

visitation, the report recounted that J.H. had supervised visits twice a week for two hours per visit, and that L.H. reported wanting to continue to see J.H. but only once a week because she would rather be at home " 'relaxing.' " L.H. stated she was open to going to a movie with J.H. In contrast, B.H. wanted more time with J.H. B.H. acknowledged that his sister felt differently and also that he "tends to give in to what she wants . . . ."

The addendum report described J.H., L.H., and B.H. working with a provider at "A Better Way," who reported the children were not afraid of J.H., but " 'there is no trust in him right now, they think he is telling lies.' " At one session in mid-December 2018, L.H. stayed for only about five minutes before requesting the session end, but agreed to return the next week so that she and B.H. could discuss their feelings. L.H. said she did not want to see J.H. Again, in contrast, B.H. indicated he wanted to stay longer, though he ultimately left when L.H. did. Garabedian noted that since August 2018, she had never observed the children being afraid of J.H. or showing signs of distrusting him. Rather, she observed them verbally, physically, and playfully interacting with him, such as L.H. using J.H.'s legs as a pillow on the floor while hanging out and talking. Visitation logs reflected the same up until the beginning of November, when L.H.'s tone began to change and B.H. followed suit. Garabedian explained, "[f]rom the beginning both children have always voiced they wanted to visit their father but supervised," but in the past months L.H. began voicing unwillingness to visit and viewing J.H. as a liar. Garabedian noted B.H. expressed wanting to see J.H. more often, but he follows his sister's wishes. Garabedian ultimately recommended further supervised visitation with J.H. because both children indicated they were uncomfortable seeing J.H. unsupervised.

Consistent with her reports, Garabedian testified at the contested hearing that early in the dependency case, the children did not seem afraid of J.H. and wanted to visit him. She noted, however, that L.H.'s position concerning visitation with J.H. began to change around November 2018. Garabedian testified her sense of things was that G.H. treated L.H. like a confidant. According to Garabedian, the relationship between the children and J.H. worsened over time, which was abnormal and seemed unjustified because J.H. "was doing everything that the agency requested of him." By the end of the dependency case, the Agency had no concerns about G.H. or either child's safety with J.H., and instead Garabedian was concerned that G.H. was coaching the children and emotionally abusing them by over-engaging them in trauma services.

At the end of the contested hearing, the trial court issued a two-year DVRO enjoining J.H. from attacking, harassing, or contacting G.H. The court also granted G.H. temporary sole legal and physical custody. In finding the evidence did not support the inclusion of the children as protected parties in the DVRO, the court explained it did not believe J.H. presently posed a threat to the children's safety or well-being. Moreover, there had been a significant period of separation, and the court wanted to begin the process of repairing the relationship between J.H. and his children, which the court felt would be in the children's best interests long term. On G.H.'s request and without objection from J.H., the court ordered that visitation with J.H. be supervised. G.H. filed a notice of appeal.

DISCUSSION

## A. The Children as Protected Parties

G.H. contends the trial court erred on two grounds in declining to add the children as protected parties in the DVRO.  We discuss each claim, in turn, below.

### 1.  Governing Law

The purpose of the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.[2]) is "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence."  (§ 6220.)  Courts may issue a restraining order to achieve this purpose upon "reasonable proof of a past act or acts of abuse."  (§ 6300, subd. (a).)  "The length of time since the most recent act of abuse is not, by itself, determinative.  The court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief."  (§ 6301, subd. (c).)

Pursuant to section 6320, subdivision (a), a court may issue an ex parte order enjoining a party from attacking, threatening, contacting, or disturbing the peace of "the other party, *and, in the discretion of the court, on a showing of good cause, of other named family or household members*."  (Italics added.)  Pursuant to section 6340, subdivision (a)(1), "[a] court may issue any of the orders described in Article 1 (commencing with Section 6320) after notice and a hearing."  As relevant here, the statute provides:  "When determining whether to make any orders under this subdivision, *the court shall consider whether failure to make any of these orders may jeopardize the safety of the*

---

[2]  All further statutory references are to the Family Code unless otherwise indicated.

8

*petitioner and the children for whom the custody or visitation orders are sought.*" (§ 6340, subd. (a)(1), italics added.)  These provisions of the DVPA "confer a discretion designed to be exercised liberally." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.)

Before addressing G.H.'s claims, we pause to address the parties' disagreement over the standard applicable to section 6340 determinations regarding the inclusion of children as protected parties under a DVRO after notice and a hearing.  G.H. contends a good cause standard applies, as in section 6320, meaning that a section 6340 order enjoining conduct described in section 6320 may include children as protected parties if supported by a finding of good cause based on the totality of the circumstances.  J.H. acknowledges a court must consider the totality of the circumstances, but contends section 6340 authorizes issuance of an order including children as protected parties only if the court finds that a failure to do so might jeopardize the children's safety.

We review issues of statutory interpretation de novo.  (*In re R.T.* (2017) 3 Cal.5th 622, 627.)  "We start with the statute's words, which are the most reliable indicator of legislative intent.  [Citation.]  'We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose.'  [Citations.]  'When language is included in one portion of a statute, its omission from a different portion addressing a similar subject suggests that the omission was purposeful.'" (*Ibid.*)  " ' "If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls." '  [Citation.]  Nonetheless, '[w]e may also look to a number of extrinsic aids, including the statute's legislative history,

9

to assist us in our interpretation.' " (*People v. Morales* (2018) 25 Cal.App.5th 502, 509.)

By its plain language, section 6340 does not make issuance of an order, such as an order pursuant to section 6320, contingent on a showing that failure to make the order may jeopardize the safety of the proposed protected parties. Similar to other DVPA provisions, section 6340 only requires that a court *consider* the safety of the petitioner and the children for whom orders under the statute are sought. (See, e.g., § 6341, subd. (c) [when making order for spousal support, "court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner, including safety concerns related to the financial needs of the petitioner"].) Had the Legislature meant to make orders contingent on a specific finding or showing, it surely would have said so, just as it did in other provisions in the DVPA. (E.g., § 6321, subd. (b) [allowing court to issue an ex parte order excluding a party from a dwelling "only on a showing of all of the following: . . . ."].) Thus, while a showing of potential jeopardy to the safety of the children might be found sufficient for including them as protected parties, it is not a necessary predicate for doing so.

Moreover, section 6340 is a statute affecting the issuance of all orders, rendered after notice and a hearing, that are described in sections 6320 through 6327. Were we to adopt J.H.'s interpretation, the proposed "jeopardy to safety" requirement in section 6340 would necessarily apply to all the various orders authorized by sections 6320 through 6327, even those that do not concern violent conduct that might jeopardize the safety of a petitioner or family members. (See, e.g., §§ 6324 [orders involving temporary use, possession, control of real or personal property and payment of liens and encumbrances], 6325 [orders involving specific acts relating to community,

10

quasi-community, or separate property], 6325.5 [orders involving acts relating to insurance or other coverage].)  In view of the overall structure of the statutory scheme, there appears no legal or logical reason for construing section 6340 as J.H. urges.

J.H. does not argue the statute is ambiguous or cite to legislative history in support of his interpretation.  Our examination of the legislative history reveals nothing indicating that the Legislature intended to make section 6340 orders *contingent* on a showing that failure to make such orders may or will jeopardize the safety of any person.  At most, reports concerning the 2004 bill that introduced the subject language mention the bill would require courts to *consider* whether failure to make orders would jeopardize the safety of the petitioners.  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2148 (2003–2004 Reg. Sess.) as introduced Feb. 18, 2004, p. 1; Assem. Com. on Appropriations, Analysis of Assem. Bill No. 2148 (2003–2004 Reg. Sess.), as amended April 28, 2004, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2148 (2003–2004 Reg. Sess.) as amended July 2, 2004, p. 2.)

J.H.'s reliance on *In re B.S.* (2009) 172 Cal.App.4th 183 (*B.S.*), *In re C.Q.* (2013) 219 Cal.App.4th 355 (*C.Q.*), and *In re N.L.* (2015) 236 Cal.App.4th 1460 (*N.L.*), does not persuade us otherwise.  Those decisions concern issuance of restraining orders under Welfare and Institutions Code section 213.5.  (*B.S.*, at p. 185; *C.Q.*, at pp. 362–363; *N.L.*, at p. 1465.)  While those cases contain certain dicta arguably supporting J.H.'s position, none purported to decide whether potential jeopardy to the safety of a petitioner was a necessary, rather than a sufficient, basis for issuing a DVRO under section 6340.  " 'It is axiomatic, of course, that a decision does not stand for a proposition not considered by the court.' "  (*Agnew v. State Bd. of*

11

*Equalization* (1999) 21 Cal.4th 310, 332.)  Moreover, J.H. fails to show or develop the argument that the two statutes are so analogous that we should interpret section 6340 in the way he suggests.

Ultimately, we read and harmonize the DVPA statutes according to their plain language.  We conclude that, after notice and a hearing, a court retains the same discretion it has under section 6320 to issue a restraining order in favor of a party, and to include family or household members as protected parties on a showing of good cause.  (§§ 6320, subd. (a), 6340, subd. (a).)  In determining whether to issue such an order, the court must consider the totality of the circumstances (§ 6301, subd. (c)) and consider whether failure to make the requested order "may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought" (§ 6340, subd. (a)(1)).  We now turn to the merits of G.H.'s claims.

### 2. *Analysis*

G.H. argues the trial court applied an incorrect legal standard by requiring a showing of probability or likelihood of future abuse before the children could be included in the DVRO as protected parties.  She claims the court excluded the children *solely* because it found that J.H. did not pose a current threat of abuse to them, which was the "functional equivalent of finding there was 'no likelihood of future abuse.' "

Having conducted a de novo review of the matter (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 821), we cannot agree the trial court applied an incorrect legal standard.  In declining to include the children as protected parties, the court provided *two* reasons:  (1) it did not believe J.H. presently posed any threat or danger to the children; and (2) it wanted the children and J.H. to begin working on repairing their relationship, which the court felt was in the children's long term best interests.

The trial court's consideration of whether J.H. presently posed a threat to the children's safety or well-being was not error. As indicated, and as G.H. acknowledges, when determining whether to issue an order under section 6340, one relevant consideration is whether failure to issue the order "may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought." (§ 6340, subd. (a)(1).) A court must also consider the totality of the circumstances. (§ 6301, subd. (c).) Thus, the issue of whether or not J.H. posed a present threat or danger to the children was surely a relevant circumstance among the totality of circumstances.

Contrary to G.H.'s assertions, the trial court did not purport to require a showing of likelihood of future abuse. (See *Rodriguez v. Menjivar*, *supra*, 243 Cal.App.4th at pp. 822–823 [issuance of a DVRO does not require a showing of probability of future abuse]; *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782–783 [same].) Although the court noted a "significant period of separation," it does not appear the court was imposing a likelihood-of-future-abuse requirement. Rather, the court simply found it would serve the children's best interests for them and J.H., who had been separated for a lengthy period concomitant with G.H.'s separation from J.H., to start repairing their broken relationship.

G.H. also contends that "nowhere does the trial court discuss the 'good cause' standard." G.H., however, never raised this complaint below, and the court's failure to "discuss" a particular standard does not imply it applied an incorrect standard. Error on appeal must be affirmatively shown by the record, and "[w]e presume the trial court knew and properly applied the law absent evidence to the contrary." (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103.)

Next, G.H. claims the trial court erred in excluding the children as protected parties because overwhelming evidence supported a finding of good cause for their inclusion. G.H. asserts the children were present for various incidents of abuse, and at least twice the abuse was directed at the children. G.H. claims the court "simply ignored this overwhelming evidence" at the contested hearing and failed to consider the totality of the circumstances. We disagree.

The record does not bear out G.H.'s claims. The transcript of the hearing shows the trial court heard the evidence and argument from both sides, explicitly stated it considered all the evidence, and then exercised its discretion upon finding that J.H. did not presently pose a threat to the children and that repairing the children's relationship with J.H. would serve the children's long-term best interests. The record before the court included evidence of J.H.'s contrition, his engagement in parenting courses, therapy, and other programs, as well as his changed alcohol consumption habits. The record additionally included the jurisdiction/disposition and addendum reports, the latter of which indicated that by January 2019 the Agency had no concerns about either child's safety with J.H. and would have recommended unsupervised visitation but for the children expressing discomfort at anything but supervised visits. Garabedian, an Agency worker with many years of experience, testified in accord. She also testified that J.H. did "everything" the Agency required of him, and that she was concerned G.H. was coaching the children against J.H. Based on the totality of the circumstances, including the length of J.H.'s separation from G.H. and the children, the court's decision to exclude the children from the DVRO was not outside the bounds of reason. (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264; see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

Finally, G.H. relies on *Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389 (*Perez*) to argue the trial court improperly ignored evidence of J.H.'s abuse involving the children. That reliance is misplaced.

In *Perez*, there was evidence that the father made harassing and threatening phone calls and texts to the mother, even after issuance of a DVRO that prohibited such contact. (*Perez*, *supra*, 1 Cal.App.5th at pp. 398–399.) Although the father did not physically abuse the mother after the DVRO had issued, he hit their younger daughter on more than one occasion causing visible injuries. (*Id*. at pp. 400–401.) After child abuse charges were filed and dropped, the father then taunted the mother with texts, at one point saying, "children pay the consequences." (*Id*. at p. 401.) The trial court in *Perez* explicitly stated it found no basis to extend the DVRO because, in its view, there was no evidence of " 'actual abuse' " since the DVRO issued, and abuse towards the children was irrelevant to the alleged abuse towards the mother. (*Id*. at p. 395.) The appellate court disagreed and concluded, among other things, that the trial court should have considered the father's abuse of the children, which was relevant to determining whether the DVRO should be renewed and also modified to include the children as protected parties. (*Id*. at pp. 400–401.) In contrast, the record here confirms the trial court considered all the evidence presented, including the past incidents of J.H.'s abuse against and in front of L.H. and B.H and the absence of any such abuse after August 2018. *Perez* plainly bears no factual resemblance to the case at hand.

## B. Evidentiary Exclusion

Next, G.H. argues the trial court abused its discretion by precluding L.H. from testifying at the contested hearing.

### i. Additional Background

On November 7, 2019, the second day of the contested hearing, G.H. informed J.H. and the court that she wanted to call her 12-year-old daughter, L.H., to testify as a percipient witness to the events in "*August 2018 and November 2016*." (Italics added.) G.H. said she was prepared to stipulate to any procedure the court thought reasonable for the examination, including for the court to conduct it. J.H. objected on the grounds that L.H. was not on G.H.'s witness list, that G.H. already testified at great length about the incidents and had other witnesses still to call, and that statements from L.H. were already in records submitted as evidence. The court ruled it would not allow L.H. to testify that day, but said it would allow the parties to brief whether she should be allowed to testify at the next hearing.

J.H. filed a brief opposing L.H.'s testimony. Relying in part on Evidence Code section 352, J.H. argued that allowing L.H. to testify would forever damage J.H.'s already fragile relationship with her, would cause delay with only two half days remaining to complete the contested hearing, and would be highly prejudicial because L.H.'s reliability and lack of bias were questionable. There was, he argued, other evidence capable of shining light on L.H.'s perspective as related to the domestic violence. Additionally, the court was unlikely to permit cross-examination, and J.H. had no intention of cross-examining her in any event. J.H. also contended that allowing L.H. to testify was not in her best interests under California Rule of Court, rule 5.520.[3]

G.H. filed a brief disputing J.H.'s contentions and arguing that L.H. was the only percipient witness to two of the most egregious acts of physical abuse, i.e., the incidents in November 2016 and August 2018.

---

[3]  All further rule references are to the California Rules of Court.

16

Prior to the third day of the contested hearing, the trial court issued a minute order precluding L.H. from testifying pursuant to Evidence Code section 352. When the contested hearing resumed, G.H. asked the court for a written statement of decision specifically addressing the exclusion of L.H.'s testimony. Although the court indicated it would take the request under consideration, the topic never appears again in the record.

### ii. Discussion

G.H. argued below that L.H.'s testimony should be admitted because she was a percipient witness to the abusive incidents that took place in August 2018 and November 2016. But G.H. never argued, as she does now on appeal, that L.H. was going to testify about acts of abuse from 2013 (when L.H. was about six years old) to 2018. Nor did G.H. establish that L.H. would or could offer the sole evidence concerning her feelings about her father or the impact of the domestic violence on her.[4] Therefore, we consider only whether the trial court abused its discretion in excluding L.H. as a percipient witness to the events in August 2018 and November 2016. Considering that issue, we see no abuse of discretion.

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time

---

[4] In the proceedings below, G.H. specifically argued that L.H. was the "only percipient witness" to the abusive acts that took place in 2016 and 2018, and generally claimed that L.H. was the only percipient witness with an "important story to tell." But G.H. did not meaningfully address J.H.'s objection that, in sum, evidence of L.H.'s perspective and feelings as related to the domestic violence already was, or would be, introduced through other evidence. As discussed below, the court did in fact receive evidence of L.H.'s contemporaneous reactions to the domestic violence, as well as the ongoing impact it had on her.

17

or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." It is well established that trial courts "must exercise their discretion to exclude under Evidence Code section 352 evidence that is unduly cumulative." (*People v. Brady* (2010) 50 Cal.4th 547, 583.)

Here, there was abundant evidence in the record of the August 2018 and November 2016 incidents, and of L.H.'s presence and reactions to them, including G.H.'s hearing testimony, photographic and eyewitness evidence of G.H.'s injuries, and the testimony and reports of Garabedian. Not only was there evidence presented concerning L.H.'s contemporaneous reactions to the domestic violence, the evidence also informed the court of the ongoing impact of that domestic violence on L.H. For example, G.H. testified that because of the history of violence, L.H. is fearful, has nightmares, is withdrawn, is clingy, needs quiet time, does not want to see J.H., throws up, cries, gets migraines, and G.H. sought therapy for the children. The Agency's jurisdiction/disposition and addendum reports and Garabedian's testimony also mentioned such matters and offered observations of L.H.'s relationship with J.H. And even though J.H. denied some of G.H.'s allegations concerning the August 2018 and November 2016 incidents, he admitted having engaged in domestic violence during those incidents while the children were present.

Given the plethora of evidence concerning the August 2018 and November 2016 incidents, including their impact on L.H., we cannot say the trial court abused its discretion in excluding her testimony under Evidence Code section 352. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

For the first time in her reply brief, G.H. argues that the trial court did not have broad discretion to simply refuse L.H.'s testimony given section 217, and that there was no stipulation by the parties or finding of good cause to exclude the testimony under section 217. These arguments, however, come

18

too late. (*Opdyk v. California Horse Racing Board* (1995) 34 Cal.App.4th 1826, 1830.) In any event, were we to consider them, we would reject them.

Section 217, subdivision (a) provides: "At a hearing on any order to show cause or notice of motion brought pursuant to this code, absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties." Subdivision (b) of section 217 provides that a trial court has the discretion to refuse to receive live testimony for good cause and must state its reasons for the finding on the record or in writing.

G.H.'s contention that a trial court lacks discretion to refuse to admit live testimony is belied by the language of section 217 and rule 5.113. Rule 5.113 provides, in part, that courts must consider the rules of evidence (such as Evidence Code section 352) and various factors in making a finding of good cause to refuse to receive live testimony, such as whether material facts are in controversy, whether live testimony is necessary to assess credibility, and whether a party filed and served a witness list with a brief description of the anticipated testimony as required by section 217. (Rule 5.113(b); cf. *In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1843–1846 [holding Welfare and Institutions Code section 706, which requires a juvenile court to consider all " 'relevant and material evidence as may be offered,' " is not literal or absolute, but rather is subject to the court's exercise of discretion and "impliedly incorporates Evidence Code section 352"].)

Here, the trial court failed to expressly mention section 217. But the parties never objected on this ground; nor did they mention section 217 when arguing about L.H. as a potential witness. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846; see, e.g., *In re Marriage of Binette* (2018) 24

Cal.App.5th 1119, 1132 ["If husband disagreed with the court's assessment, he should have stated his position on the record and requested the opportunity to present live testimony as authorized by section 217."].) Furthermore, the court issued a written decision indicating it considered the parties' pleadings, arguments, briefs, and the factors in rule 5.250(c)(3), and decided to exclude L.H.'s testimony under Evidence Code section 352. Viewed in context, the court's determination under Evidence Code section 352 constituted a finding of good cause to refuse the live testimony under section 217, subdivision (b). (See rule 5.113(b).)

Finally, G.H. claims the trial court erred in considering the "best interest" factors set out in rule 5.250(c). G.H., however, forfeited this argument because she never objected to consideration of those factors below; indeed, she took a contrary position at trial, arguing the court should consider them.[5] (*In re Aaron B.*, *supra*, 46 Cal.App.4th at p. 846.)

In sum, the trial court did not err in excluding L.H.'s testimony.

## C. The Length of the DVRO

In the proceedings below, G.H. sought a five-year DVRO, while J.H. opposed issuance of a DVRO entirely. The trial court found sufficient evidence to issue the DVRO due to physical and sexual abuse and granted G.H. a two-year DVRO, stating, "I'm deviating down from the standard three years in light of the passage of time since the last abuse, which has been about 17 months."

In challenging the trial court's refusal to grant a five-year DVRO, G.H. contends the court erroneously relied "on a non-existent 'three-year legal standard' for DVROs as a starting place." We are not persuaded. As G.H.

---

[5] Notably, the parties fail to discuss the fact that rule 5.113(d) requires courts to "follow the procedures" in rule 5.250.

acknowledges, section 6345, subdivision (c), imposes essentially a default duration of three years for DVROs when the court is silent as to an alternative length. There is nothing in the record indicating that the court was not simply referencing this provision or, more significantly, that it was actually ignorant of its discretion to impose a five-year DVRO, as G.H. had requested. (§ 6345, subd. (a).)

G.H. next argues the trial court did not consider the totality of the circumstances but instead reduced the length of the DVRO by improperly and solely relying on the passage of time since the last incident of abuse in violation of section 6301, subdivision (c). We disagree.

Section 6301, subdivision (c), provides: "The length of time since the most recent act of abuse is not, by itself, determinative. The court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief." Here, as stated, the trial court indicated it considered the evidence presented by both sides, including the evidence submitted in writing and the testimony of all witnesses. The court then granted the DVRO that G.H. sought and set its duration at two years based on all such evidence, including the evidence that 17 months had elapsed since the last incident of abuse. This was not a violation of section 6301, subdivision (c). To the contrary, this shows the court considered the totality of the circumstances, as it was required to do.

### DISPOSITION

The order is affirmed. The parties shall bear their own costs on appeal.

21

_____

Fujisaki, Acting P.J.

WE CONCUR:


_____

Jackson, J.


_____

Wiseman, J.*

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**L.H. v. G.H.  (A160303)**


Trial Court:  City and County of San Francisco


Trial Judge:  Richard Darwin


Attorneys:

Family Violence Appellate Project, Cory D. Hernandez, Shuray Ghorishi, Jennafer D. Wagner, Erin C. Smith; Law Offices of David C. Beavans, John T. Sylvester for Appellant.

Katz Appellate Law and Paul J. Katz for Respondent.