Filed 6/8/26  Marriage of M.F. and E.F. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of M.F. and E.F. | H053240<br>(Santa Clara County<br>Super. Ct. No. 21FL003336) |
| M.F.,<br><br>        Respondent,<br><br>        v.<br><br>E.F.,<br><br>        Appellant. | |

Appellant E.F. challenges a domestic violence restraining order (DVRO) granted in favor of his ex-wife, respondent M.F.[1]  E.F. argues that the evidence relied on by the trial court was unreliable and insufficient.  He argues further that he was not afforded due process at the DVRO hearing because the trial court did not offer him the opportunity to cross-examine M.F. and further develop the record.  We conclude that the DVRO is supported by substantial evidence, including a prior incident of physical violence, even though the date of that incident was somewhat uncertain.  We also conclude that E.F. has not met his burden to show any prejudicial error in the conduct of the hearing.  Accordingly, we affirm.

---

[1] Although the parties' briefs use full names, we will use initials to preserve personal privacy under rule 8.90(b) of the California Rules of Court.

## I.  BACKGROUND

E.F. and M.F. were married for five years before divorcing in November 2024.  In December 2024, M.F. filed a request for a DVRO against E.F., and the trial court granted a temporary restraining order pending a hearing.  In her request for the DVRO, M.F. described the following incidents of abuse: (1) 2015 – E.F. took photos of her naked and posted private videos of her on Facebook; (2) 2015 – E.F. came home late smelling of alcohol and forcefully removed M.F.'s clothing and had sexual intercourse with her; (3) June 2019 – During a drive back from Michigan, E.F. became upset during a conversation and punched M.F. in the face; (4) August "202-" – E.F. became angry during a conversation and strangled M.F. with two hands; (5) November 2021 – After M.F. went through IVF treatment for three years, E.F. cancelled her embryo transfer surgery; (6) November 2024 – E.F. came to M.F.'s house drunk late at night.

Although the hearing was originally set for early January, it was continued to February 27, 2025.  E.F. and M.F. testified, both representing themselves.  M.F. used a Spanish interpreter, but she also spoke in English for at least part of the hearing.  E.F.'s current girlfriend, J.O., testified using the Spanish interpreter, as well.

M.F. started her testimony by describing the most recent incident on November 4, 2024, when she heard a noise outside her door at 8:30 p.m. and saw E.F. "hiding into the shadow of the house."  She asked him why he was there, and he did not really say. ("He's like, nothing, nothing.")  She told him he was not welcome at her house: "This is more than five times you're coming to my house.  And I told you, you are not welcome. This is my house.  And – and see you in court …."  She also said to E.F. that she was scared of him, and she reminded him about how he had strangled her in the past.  M.F. found out that J.O. was waiting in E.F.'s car during this encounter, which she says lasted about "20 minutes or less."

M.F. testified about other incidents in the more distant past, including the 2021 cancellation of her IVF treatment, and the strangulation "in August."  The court asked for

clarification regarding the year in which the strangulation occurred ("[b]ecause there was a number that was cut off.  If it happened (indiscernible) I'm assuming August 2020 sound about right?"), and M.F. agreed that it was in 2020.  In describing this incident, M.F. used her hands near her neck area to show a "strangulation type of motion."  M.F. stated that E.F. left marks on her neck, but she did not have any pictures and did not file a police report, even though she says she did drive to the police station.  The trial court asked M.F. about the three older incidents in 2015 and 2019 but without requesting as much detail as for the more recent events.

E.F. then testified that he was not intoxicated during the November 4, 2024 incident and that he was at M.F.'s house for no more than 10 minutes.  He claimed that he had gone there to ask for his passport, so that he could obtain a "church" divorce from M.F., even though they were already legally divorced.  He claimed that this request "upset her, because her family is very traditional."  In addition, he testified that once she learned that J.O. was waiting in his car, "she became belligerent and aggressive," because "she's extremely jealous of [J.O.]."  He recounted past disagreements between M.F. and J.O., as well as the fact that M.F. was "very angry" that her 19-year-old son was living with E.F. and J.O. at the time.  With regard to the IVF treatment, E.F. asserted that M.F. only underwent the treatment for three months, not three years.

J.O.'s testimony corroborated E.F.'s regarding the "hostile" relationship between her and M.F., the fact that E.F. came to ask for his passport, and the fact that in one of her disagreements with M.F., M.F. had scratched her "[a]bout a year" earlier.  J.O. testified that the November 4, 2024 incident lasted "[f]or about 30 minutes."

After asking questions of E.F., M.F., and J.O., the trial court asked M.F. if there were any questions she wanted to have asked of E.F., to which she said, "No questions."  The court did not ask E.F. if he had any questions for M.F.  The court then announced its findings.  The court stated that the November 2024 incident was "predominantly verbal in nature," with "no credible direct threats" to M.F.  As a result, the conduct in that incident

3

did not reach the level of domestic violence. As for the 2020 strangulation incident, however, the court stated that it was "very concerning for the Court because the alleged conduct is violent and, if believed, would clearly fall within that behavior between people who are married or otherwise involved in a long-term relationship as domestic violence." The court found there was credible evidence that the strangulation incident had occurred and that it was an act of domestic violence.

The court issued a three-year restraining order, which included no-contact and stay-away orders, as well as a firearms prohibition.

E.F. timely appealed.

## II.    DISCUSSION

### A.    *Governing Law and Standard of Review*

"The Domestic Violence Prevention Act (DVPA) [citation] permits the trial court to issue a protective order 'to restrain any person for the purpose' of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved; the petitioner must present 'reasonable proof of a past act or acts of abuse.' [Citation.]" (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820, fn. omitted (*Rodriguez*).) "A restraining order may issue under the DVPA either 'enjoining specific acts of abuse,' 'excluding a person from a dwelling,' or 'enjoining other specified behavior' and may issue ex parte, after notice and a hearing, or in a judgment. [Citation.]" (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1494 (*Nadkarni*).) Acts that can be enjoined include "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating … , falsely personating … harassing, telephoning … destroying personal property, contacting … or disturbing the peace of the other party…." (Fam. Code, § 6320, subd. (a).) The DVPA should be broadly construed to accomplish its purpose. (*Nadkarni*, *supra*, at p. 1498.) A restraining order issued after notice and a hearing may have a duration of up to five years. (Fam. Code, § 6345, subd. (a).)

4

"We review the trial court's grant or denial of a DVPA restraining order request for an abuse of discretion. [Citation.] … ' "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." ' [Citation.]" (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115-116.) In our examination of the sufficiency of the evidence, "[w]e accept as true all evidence tending to establish the correctness of the trial court's findings and resolve every conflict in favor of the judgment. [Citation.]" (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1144.)

**B.      *Whether Substantial Evidence Supports the Trial Court's Order***

E.F. argues that the trial court's finding that he strangled M.F. in August 2020 was speculative rather than based on reasonable and credible evidence. He points out that M.F.'s request on form DV-100 for a DVRO did not identify a specific year in which the strangulation occurred, but stated only "August 202-." In addition, on reply, he notes that M.F. repeatedly states in her respondent's brief that the strangulation occurred in "August 2021," contrary to her sworn testimony, further undermining the reliability of this accusation.

The trial court specifically questioned M.F. at the hearing regarding the strangulation incident; she testified as to the facts underlying the strangulation; she also affirmatively stated that it had occurred "in August"; and the court made findings of fact based on this testimony. This is conclusive, even if M.F. was uncertain about the year of the incident and simply adopted the trial court's suggestion at the hearing of "2020," based on the court's own "assum[ption]." "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 403.) "If two or more reasonable inferences can be reasonably deduced from the facts, we have no authority as a reviewing court to substitute our

judgment for the trial court's judgment. [Citation.]" (*McCord v. Smith* (2020) 51 Cal.App.5th 358, 364.) Further, "[t]he testimony of one witness, even that of a party, may constitute substantial evidence. [Citation.]" (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703.) Although M.F. was uncertain of the year of the incident when testifying, that does not mean that the trial court was required to find that it was a fabrication, and we also have no reason to conclude that the trial court would have ruled any differently if the incident had happened in August 2021 instead of August 2020.

Citing *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275 (*Ritchie*), E.F. argues that even if the strangulation incident happened, it does not support the issuance of a DVRO because the DVPA only "authorizes restraining orders as a preventative remedy—to prevent the recurrence of abuse and protect against a future need for violence." In *Ritchie*, the Court of Appeal held that a trial court should renew a protective order only if it finds the protected party has a "reasonable apprehension" of future abuse. (*Id.* at p. 1290.) *Ritchie* is inapposite because, in the present matter, we are not faced with the renewal of an existing protective order. "No showing of the probability of future abuse is required to issue a DVPA restraining order: 'A trial court is vested with discretion to issue a protective order under the DVPA simply on the basis of an affidavit showing past abuse.' [Citation.]" (*Rodriguez*, *supra*, 243 Cal.App.4th at p. 823.) Therefore, the trial court here had the discretion to issue the DVRO based solely on M.F.'s testimony and the court's factual finding that E.F. had strangled M.F. in the past.

Moreover, as a purely factual matter, E.F.'s argument overlooks M.F.'s testimony at the February 27, 2025 hearing that she was "very scared" by his appearance on November 4, 2024 and that he had come by "more than five times" since their divorce, even though she had made it clear he was "not welcome."

6

## C.    *Due Process*

E.F. argues that the trial court denied him a meaningful opportunity to cross-examine M.F. and develop the record, and that the error was prejudicial.  In support of his contention, he cites *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 (*Elkins*).  In *Elkins*, "[a] local superior court rule and a trial scheduling order in the family law court provided that in dissolution trials, parties must present their cases by means of written declarations." (*Id*. at p. 1344.)  The California Supreme Court concluded that the rule and order were inconsistent with various statutory provisions.  (*Id*. at p. 1345.)  It held that "parties have the right to testify in their own behalf [citation], and a party's opportunity to call witnesses to testify and to proffer admissible evidence is central to having his or her day in court."  (*Id*. at p. 1357.)

The hearing in this case did not have the same due process problems that existed in *Elkins*.  The parties here were permitted to testify orally, and E.F. was also allowed to have another witness testify in support of his version of events.  E.F. asserts that the trial court told him to write down his questions rather than conduct his own examination, but this is not entirely accurate.  After the court told the parties that it would "do most of the questioning," the court stated: "[I]f you find it helpful, you're welcome to write down your questions as we go along so you don't lose – so you don't forget when the time comes to that particular question."  Although the court did not invite E.F. to ask questions of M.F. (and did issue that invitation to M.F.), the record does not show that E.F. ever asked for the opportunity to ask any questions, nor did he object to the adequacy of the court's questions or suggest what further questioning might elicit.  " 'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' [Citations.] [Citation.]" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)  Again, E.F. did have the opportunity to present evidence, both through his own and J.O.'s testimony and by submitting exhibits to the court.

To the extent that E.F. takes issue with the questioning by the trial court, we note that in a hearing for a DVRO, "the judge [is] necessarily expected to play a far more active role in developing the facts." (*Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 861.) Such hearings often involve self-represented litigants, as here, and "the judge cannot rely on the propria persona litigants to know each of the procedural steps, to raise objections, to ask all the relevant questions of witnesses, and to otherwise protect their due process rights." (*Ibid.*)

Further, "for over 100 years, the California Constitution has … expressly precluded reversal absent prejudice." (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107.) Specifically, " '[n]o judgment shall be set aside, or new trial granted, in any cause, ... for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Ibid.*) Although E.F. generally contends that the hearing procedure employed by the trial court curtailed his ability to cross-examine M.F. directly regarding the strangulation incident, the record here does not show even by offer of proof how his additional questioning of M.F. could have affected the outcome.

We conclude that E.F. has not met his burden to show prejudicial error. (See *MTC Financial Inc. v. California Dept. of Tax & Fee Administration* (2019) 41 Cal.App.5th 742, 746 ["the appellant[] has the burden of demonstrating the trial court erred"].)

### III.    DISPOSITION

The February 27, 2025 restraining order after hearing is affirmed. Costs on appeal are awarded to M.F. (Cal. Rules of Court, rule 8.278(a)(1).)

8

_____
CHUNG, J.*

WE CONCUR:

_____
LIE, ACTING P. J.

_____
WILSON, J.

*M.F. v. E.F.*
H053240

---

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.